UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**BETH A. LIVINGSTON**,                        Case Number 3:13 CV 886

Plaintiff,                                     Judge Jeffrey J. Helmick

     v.                                       REPORT AND RECOMENDATION

**COMMISSIONER OF SOCIAL SECURITY**,

Defendant.                                     Magistrate Judge James R. Knepp, II

### INTRODUCTION

Plaintiff Beth A. Livingston seeks judicial review of Defendant Commissioner of Social Security's decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). The district court has jurisdiction under 42 U.S.C. § 405(g) and § 1383(c)(3). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2 (b)(1). (Non-document entry dated April 19, 2013). For the reasons stated below, the undersigned recommends the Commissioner's decision be affirmed.

### PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on June 22, 2009, claiming she was unable to work due to bipolar disorder, diabetes, high blood pressure, and chronic pain. (Tr. 147, 149, 181). Her claims were denied initially and on reconsideration. (Tr. 74, 78). At Plaintiff's request, a hearing was held before an administrative law judge ("ALJ"). (Tr. 32, 101). Plaintiff, represented by counsel, and a vocational expert ("VE") testified at the hearing, after which the ALJ found Plaintiff not disabled. (Tr. 12, 32). The Appeals Council denied Plaintiff's request for

1

review, making the hearing decision the final decision of the Commissioner. (Tr. 1); 20 C.F.R. §§ 416.1455, 416.1481. On April 19, 2013, Plaintiff filed the instant case. (Doc. 1).

## FACTUAL BACKGROUND

*Plaintiff's Vocational and Personal Background*

Plaintiff was 49 years old at the time of her alleged disability onset date of June 10, 2008. (Tr. 17, 24). She has a high school education and prior relevant work experience as an administrative clerk, media clerk, and computer operator. (Tr. 24-25).

After spending time in a homeless shelter, Plaintiff moved to a second floor apartment where she lived by herself. (Tr. 42, 191). With respect to daily activities, Plaintiff sat outside and read, wrote poetry (especially during a manic episode), completed household chores with breaks, went grocery shopping but would have to lean on the cart, made her bed, washed her face, and brushed her teeth. (Tr. 191). Plaintiff testified she spent most of the day cleaning with breaks and enjoyed reading James Patterson novels. (Tr. 49-50, 52).

At the hearing, Plaintiff testified she quit her most recent job at Goodwill because her boss made her angry "most days". (Tr. 39). Plaintiff took Lamictal and Wellbutrin but said they caused hand tremors which made it difficult to write and hold heavy objects. (Tr. 41). She said she could not work because she had a hard time focusing and concentrating and suffered from manic bipolar which caused her to be angry. (Tr. 44, 53). Plaintiff said she was hospitalized around 2003 or 2004 when she lost her temper and said things to her daughter she "would never say". (Tr. 44). Plaintiff said she was fired from a product auditing job at Meijer because she fell asleep at work more than once. (Tr. 47). Plaintiff was diabetic and indicated hand tremors made it difficult for her to administer insulin. (Tr. 48). Further, Plaintiff said fibromyalgia-type symptoms and neuropathy made it difficult for her to walk or grocery shop. (Tr. 49, 51).

*Relevant Medical Evidence*

Plaintiff generally challenges only the ALJ's conclusions regarding her mental limitations (Doc. 15) and therefore waives any claims about the determinations of her physical impairments. *Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517-18 (6th Cir. 2010) (noting failure to raise a claim in merits brief constitutes waiver). Specifically, Plaintiff challenges only the ALJ's treatment of Dr. Ilechukwu's opinion and whether the ALJ met her burden at step five. (Doc. 15, at 14, 17). Accordingly, the undersigned addresses only the record evidence pertaining to Plaintiff's arguments.

Plaintiff began seeing psychiatrist Sunday Ilechukwu, M.D., in December 2009. (Tr. 797). Plaintiff experienced angry outbursts, yelling, kicking, impaired sleep, and a variable appetite. (Tr. 800). Plaintiff also said two months earlier, she heard her deceased's mother's voice calling her name. (Tr. 800). Dr. Ilechukwu indicated Plaintiff's speech exhibited a normal rate and rhythm, she displayed a full range in her affect that was appropriate to content, her thought process was goal directed and forward thinking, and she denied difficulty with concentration and focus. (Tr. 801). Plaintiff's mood was dysphoric, anxious, and irritable and her insight was fair. (Tr. 801). Dr. Ilechukwu diagnosed bipolar disorder, adjusted Plaintiff's medications, and assigned a global assessment of functioning ("GAF") score of 55.[1] (Tr. 804).

In March 2010, Dr. Ilechukwu reviewed Plaintiff's medications. (Tr. 766-71, 776-81). Plaintiff said her mind raced at times, she felt anxious and fidgety, and isolated herself to avoid people. (Tr. 767). Plaintiff also complained of insomnia, low energy and motivation, and feeling

---

1. The GAF scale represents a "clinician's judgment" of an individual's symptom severity or level of functioning. American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders*, 32-33 (4th ed., Text Rev. 2000) (*DSM-IV-TR*). A GAF score of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers and co-workers). *Id.* at 34.

like a failure. (Tr. 767). Plaintiff said she read three books per week but was often restless and unable to sustain productivity. (Tr. 767). Dr. Ilechukwu noted Plaintiff was "quite interactive", her mood was dysphoric and anxious, affect was brighter, and insight was fair. (Tr. 767). She diagnosed bipolar disorder with psychotic features and adjusted Plaintiff's medication. (Tr. 770-71).

On July 2, 2010, Dr. Ilechukwu noted Plaintiff's mood and insight remained dysphoric and fair, respectively, but overall, she was somewhat improved. (Tr. 983). Dr. Ilechukwu adjusted Plaintiff's medication and assigned a GAF of 55.[2] (Tr. 986). Plaintiff's condition remained generally unchanged in October 2010. (Tr. 952).

On January 27, 2011, Dr. Ilechukwu indicated Plaintiff's mental status examination was unremarkable and Plaintiff's GAF improved to 57.[3] (Tr. 941). However, Plaintiff said her anxiety had worsened. (Tr. 937). Consequently, Dr. Ilechukwu increased Plaintiff's dose of medication. (Tr. 941).

On March 25, 2011, Dr. Ilechukwu completed a Medical Source Statement where she indicated Plaintiff had a marked limitation in abilities to withstand the stresses and pressures of routine, simple, unskilled work; interact appropriately with others (including the public, supervisors, and coworkers); and keep a work schedule and maintain punctual attendance. (Tr. 910-11). Plaintiff had moderate limitations in abilities to maintain attention and concentration for two hours and maintain a reasonable pace. (Tr. 910-11). She had less than moderate limitations in abilities to remember, understand, and follow simple instructions. (Tr. 910-11). Dr. Ilechukwu indicated Plaintiff's functional status varied with the phase of illness and medication compliance. (Tr. 911).

---

2. *DSM-IV-TR*, *supra*, note 1.
3. *DSM-IV-TR*, *supra*, note 1.

4

On May 6, 2011, Plaintiff told Dr. Ilechukwu that anxiety was more tolerable than the shakes. (Tr. 1064). Dr. Ilechukwu indicated Plaintiff's disability worsened with isolation but she was doing better, her anxiety had not recurred, her energy level was moderate, she was in high spirits, and did not appear psychotic, although she thought she saw or felt a ghost. (Tr. 1064).

On August 26, 2011, Dr. Ilechukwu provided a statement for the Ohio Job and Family Services. (Tr. 1048). She indicated Plaintiff's condition had not yet stabilized at a good functional state and her GAF fluctuated between 52 and 55.[4] (Tr. 1049). Dr. Ilechukwu considered Plaintiff unemployable. (Tr. 1049).

In September, 2011, Dr. Ilechukwu conducted a medication check where Plaintiff said she was sleeping less and crying all day long. (Tr. 1040). Plaintiff denied difficulty with focus or concentration or suffering from delusions or hallucinations. (Tr. 1041). Plaintiff was oriented, with a logical thought process, was goal-directed, and forward thinking. (Tr. 1041). However, she had a variable mood and was often irritable, her speech was pressured, her mood was dysphoric, irritable, and expansive, and her insight was fair. (Tr. 1041).

At the end of the month, Plaintiff returned to Dr. Ilechukwu's office saying she had not slept in five days. (Tr. 1030). Dr. Ilechukwu noted Plaintiff's grooming was marginal, she was somewhat lethargic, and she was holding on to objects when she walked in, despite her claims she had been dropping things repeatedly. (Tr. 1030). Dr. Ilechukwu suspected a paradoxical reaction to medication, including an impaired ability to absorb general Lamictal. (Tr. 1030).

*State Agency Review and Examination*

On October 29, 2009, Mark Hammerly, Ph.D., performed a consultative examination where he indicated Plaintiff's mental ability to relate to others was mildly impaired and her

---

4. *DSM-IV-TR*, *supra*, note 1.

ability to understand, remember, and follow instructions was not impaired. (Tr. 690). Plaintiff was capable of comprehending and completing simple, routine activities of daily living and had no comprehension or memory problems. (Tr. 690). She was not impaired in ability to maintain concentration, persistence, or pace to perform simple, repetitive tasks and demonstrated no problems with attention or concentration during her clinical interview and mental status exam. (Tr. 690). Plaintiff was moderately impaired in ability to withstand the stress and pressures associated with day-to-day work activity due to bipolar disorder but had no trouble making change and her judgment was grossly intact. (Tr. 690). Concerning bipolar disorder, Dr. Hammerly noted Plaintiff's symptoms were atypical but there was some sort of past bipolar disturbance. (Tr. 689). Dr. Hammerly assigned a GAF of $50^5$ due to her homelessness. (Tr. 689).

State agency psychologist Kristen Haskins, Psy.D., reviewed Plaintiff's medical records on December 15, 2009. (Tr. 701). She opined Plaintiff could complete simple and moderately complex multi-stop instructions in a setting that was not fast paced and did not have stringent time or production requirements. (Tr. 704). On May 27, 2010, Karen Terry, Ph.D., affirmed Dr. Haskins' opinion. (Tr. 854).

*VE Testimony and ALJ Decision*

The ALJ described a hypothetical individual of the same age, education, and work experience as Plaintiff, who was limited to a range of light work. (Tr. 62). The VE opined such a person could work as a charge account clerk, order clerk, or shipping/receiving weigher. (Tr. 63-65).

---

5. A GAF of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *DSM-IV-TR*, at 34.

6

On October 26, 2011, the ALJ determined Plaintiff suffered from severe impairments, including mild osteoarthritis of the knees; unspecified essential hypertension; unspecified hyperlipidemia, type II (non-insulin-dependent) diabetes mellitus; obesity; and bipolar I disorder. (Tr. 12, 17). The ALJ found these impairments did not meet or medically equal a listed impairment. (Tr. 19).

Next, the ALJ determined Plaintiff had the residual functioning capacity (RFC) to perform a range of light work, except she required a sit/stand option, did not retain the capacity to climb ladders, ropes, or scaffolds, and could not climb ramps or stairs on more than an occasional basis. (Tr. 21). Further, she could kneel or crawl occasionally and balance or crouch frequently. (Tr. 21). Plaintiff retained the mental capacity to carry out simple to moderately complex tasks in a low stress, non-production-pace environment and could tolerate occasional interaction with the general public. (Tr. 21).

Based on VE testimony, the ALJ determined Plaintiff could perform work as a charge account clerk, order clerk, or shipping/receiving weigher, and was therefore, not disabled. (Tr. 25).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings

"as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence, or indeed a preponderance of the evidence, supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for DIB and SSI is predicated on the existence of a disability. 42 U.S.C. § 423(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five–step evaluation process – found at 20 C.F.R. § 404.1520 – to determine if a claimant is disabled:

1. Was the claimant engaged in a substantial gainful activity?

2. Did the claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's RFC and can she perform past relevant work?

5. Can the claimant do any other work considering her RFC, age, education, and work experience?

Under this five–step sequential analysis, the claimant has the burden of proof in steps one through four. *Walters*, 127 F.3d at 529. The burden then shifts to the Commissioner at step five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.* The court considers the claimant's RFC, age, education, and past work experience

8

to determine if the claimant could perform other work. *Id.* A claimant is only found disabled if she satisfies each element of the analysis, including inability to do other work, and meets the durational requirements. 20 C.F.R. §§ 404.1520(b)–(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff generally argues the ALJ failed to properly evaluate Dr. Ilechukwu's opinion and did not support her step five determination with substantial evidence. (Doc. 15, at 12, 17). Each argument is addressed in turn.

### *Treating Physician Rule*

While Plaintiff does not directly challenge the ALJ's substantive RFC findings, Plaintiff argues the ALJ: 1) failed to acknowledge the totality of Dr. Ilechukwu's opinion; 2) used isolated treatment notes out of context to undermine Dr. Ilechukwu's report; 3) improperly concluded it was "impossible to reconcile inconsistencies" in Dr. Ilechukwu's opinion; and 4) failed to provide good reasons for the weight afforded. Each argument implicates the treating physician rule.

An ALJ must weigh medical opinions in the record based on certain factors. 20 C.F.R. § 404.1527(c); 416 C.F.R. 927(c). In determining how much weight to afford a particular opinion, an ALJ must consider: (1) examining relationship; (2) treatment relationship—length, frequency, nature and extent; (3) supportability; (4) consistency; (5) specialization; and (6) other factors that support or contradict the opinion. *Id.*; *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010).

Generally, the medical opinions of treating physicians are accorded greater deference than non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* SSR 96-2p, 1996 WL 374188. "Because treating physicians are 'the medical

professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairments and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. § 416.927(d)(2)). A treating physician's opinion is given "controlling weight" if supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." *Id.* (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Even if the treating physician's opinion is not entitled to "controlling weight," there is nevertheless a rebuttable presumption that it deserves "great deference" from the ALJ. *Id.*

Importantly, the ALJ must give "good reasons" for the weight given a treating physician's opinion. *Id.* Failure to do so requires remand. *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409–10 (6th Cir. 2009). An ALJ's reasoning may be brief, *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009), but failure to provide any reasoning requires remand. *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409–10 (6th Cir. 2009). Good reasons are required even when the ALJ's conclusion may be justified based on the record as a whole. The reason-giving requirement exists, in part, to let claimants understand the disposition of their cases, particularly in cases where a claimant knows his physician has deemed her disabled and might be bewildered when told by an ALJ she is not, unless some reason for the agency's decision is supplied. *Wilson*, 378 F.3d at 544 (quotations omitted). "The requirement also ensures the ALJ applied the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id*.

10

Permeating each of Plaintiff's arguments is the issue of whether the ALJ provided good reasons for rejecting parts of Dr. Ilechukwu's opinion. Here, after acknowledging Dr. Ilechukwu as Plaintiff's treating psychiatrist, the ALJ rejected parts of Dr. Ilechukwu's medical source statement that were inconsistent with the doctor's own treatment records and the record as a whole. (Tr. 22-23). As part of that determination, the ALJ considered the treating relationship between Plaintiff and Dr. Ilechukwu, Dr. Ilechukwu's specialty, and the supportability and consistency of Dr. Ilechukwu's opinion. (Tr. 22-23). Therefore, the ALJ provided "good reasons" for affording parts of the opinion less than full weight and Plaintiff's fourth argument, regarding the same, is not well-taken. 20 C.F.R. § 404.1527(c); 416 C.F.R. 927(c).

Turning to Plaintiff's first argument, Plaintiff claims the ALJ failed to consider the record as a whole because she did not acknowledge all of Dr. Ilechukwu's medical source statement; specifically Plaintiff's ability to keep a regular work schedule and her moderate limitations in pace, attention, and concentration. (Doc. 15, at 13). However, it is well established that the ALJ is not required to discuss every piece of evidence submitted and the ALJ's failure to cite specific evidence does not mean she did not consider the evidence. *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 489 (6th Cir. 2005); *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 754 (6th Cir. 2011). Simply stated, the ALJ did not need to address each bullet point in Dr. Ilechukwu's opinion separately under the regulations. SSR 96-5p, 1996 WL 374183, at *4; *Sinegar v. Comm'r of SSA*, 2014 U.S. Dist. LEXIS 28052, at *21 (N.D. Ohio) (noting that the text of SSR 96-5p is clearly discretionary).

Further, any purported error is harmless. To this end, Plaintiff argues the ALJ improperly failed to assign weight to Dr. Ilechukwu's opinion regarding Plaintiff's moderate limitations in concentration, persistence, or pace. But, upon review, the ALJ agreed with Dr. Ilechukwu's

11

opinion when she limited Plaintiff to work which required her to carry out only simple (to moderately complex) tasks in a non-production pace environment. (Tr. 21). Indeed, the ALJ plainly stated, "I agree that [Plaintiff] should be able to complete 'simple and moderately complex multi step instruction in a setting that is not fast paced and does not have stringent time or production requirements.'" (Tr. 23). Thus, any failure to explicitly state how much weight the ALJ provided Dr. Ilechukwu's opinion regarding limitations in pace, attention, or concentration is harmless because the ALJ's opinion is consistent with Dr. Ilechukwu's findings. *Wilson*, 378 F.3d at 547; *Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir. 2007).

Similarly, concerning the ALJ's treatment of Dr. Ilechukwu's opinion that Plaintiff was limited in ability to maintain a regular work schedule, the ALJ indicated there was a lack of support in the record to find Plaintiff cold not tolerate the normal stress of full-time employment beyond the limitations set forth in the RFC. (Tr. 22-23). To this end, the ALJ wrote, "[i]n light of [Plaintiff's] own reports included in her treating records, it is impossible to accept Dr. Ilechukwu's assertion that the claimant does not possess the ability to interact with others or to deal with stress *on a full-time basis*." (Tr. 23) (emphasis added). Thus, the ALJ did not ignore Dr. Ilechukwu's opinion regarding ability to work on a full-time basis, and provided good reasons for rejecting the same, as described below.

Plaintiff argues the ALJ used "isolated treatment notes out of context to undermine Dr. Ilechukwu's report." (Doc. 15, at 14). Specifically, Plaintiff takes issue with the ALJ's statement that, "it is impossible to accept Dr. Ilechuckwu's assertion that [Plaintiff] does not possess the ability to interact with others or to deal with stress on a full-time basis." (Tr. 23). However, there is substantial evidence in the record to support the ALJ's rejection of this opinion.

Indeed, as the ALJ stated, Plaintiff did not refer to any examples of angry behavior during her testimony, and she had documented positive social interaction when she took medication regularly. (Tr. 22). Plaintiff's anger did not cause her to be fired from any job, but rather, she testified to quitting because she did not like her boss. (Tr. 22). Plaintiff was able to "maintain her composure" despite a stressful living situation and was able to secure her own housing. (Tr. 22). "She appeared to Dr. Hammerly to be calm, to concentrate well, and to remember items at that time." (Tr. 22). Further, the ALJ pointed to Dr. Ilechukwu's note that Plaintiff appeared to be doing "real well" and she could read up to three books in a week. (Tr. 23). Plaintiff did not exhibit any objective signs of psychosis but was rather "interactive" with an "affect brighter than admitted". (Tr. 23). Plaintiff discussed the positive use of medication and her ability to carry out a productive daily routine. (Tr. 23). She did not report an inability to retain restorative sleep, or any other disabling symptoms, contrary to the alarming reports of anxiety tremors. (Tr. 23). Plaintiff attended weekly community meetings and monthly lunches and did not report anger issues to her therapist in February 2011. (Tr. 23). Plaintiff testified she continued to read on a regular basis, contrary to her vague reports of poor focus. (Tr. 23). Based on this, the undersigned finds the ALJ did not rely on "isolated" treatment notes, but rather, considered her longitudinal treatment history and testimony to conclude Plaintiff was not markedly limited in ability to interact with social situations.

Third, Plaintiff takes issue with the ALJ's observation, made in a footnote, that "it is impossible to reconcile the obvious inconsistences between (1) Dr. Ilechukwu's reference to a 'marked' limitation in the claimant's ability to maintain adequate social functioning, (2) the subsequent assertion that the claimant's bipolar symptoms appear to get *worse* with social

13

isolation; and (3) the assignment of GAF scores in the 'moderate' range at all times." (Tr. 23, n.4).

As an initial matter, the ALJ provided good reasons for discounting Dr. Ilechukwu's opinion in the body of her decision, as described above. Further, even if it were possible to reconcile the inconsistencies, that does not render the ALJ's decision invalid. The ALJ was simply discrediting the supportability of Dr. Ilechukwu's opinion for inconsistent statements regarding Plaintiff's mental functioning. The fact Dr. Ilechukwu indicated social isolation worsened Plaintiff's symptoms so that Plaintiff would be allowed to have her cat live with her does not change the opinion in and of itself, contrary to Plaintiff's argument. Regardless, because the ALJ provided good reasons for the weight afforded to Dr. Ilechukwu's opinion, including extensive references to the record, Plaintiff's third argument is not well taken.

*Step Five Determination*

Based on VE testimony, the ALJ determined Plaintiff could work in three capacities based on her age, education, and RFC. Plaintiff argues two of these jobs should be excluded because Plaintiff's age disqualifies her from sedentary positions. (Doc. 15, at 18). The Commissioner does not dispute this statement but argues the remaining position of shipping/receiving weigher, of which the ALJ determined there were 83,097 jobs nationally and 892 jobs regionally, amounts to substantial evidence. (Doc. 17, at 21; Tr. 25).

At step five, the Commissioner has the burden to show, considering a claimant's age, education, and work experience, that jobs exist in significant numbers in the national economy which claimant can perform. 20 C.F.R. § 416.969; *Hall v. Bowen*, 837 F.2d 272, 272 (6th Cir. 1988). Under the Regulations, "work exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions of the

14

country." 20 C.F.R. § 416.966(a). There is no bright-line boundary separating a "significant number" from an insignificant numbers of jobs. *Hall*, 837 F.2d at 275 (6th Cir. 1988).

A reviewing court should "consider many criteria in determining whether work exists in significant numbers" including "the level of the claimant's disability[,] the reliability of the [VE's] testimony[,] the reliability of the claimant's testimony[,] the distance claimant is capable of travelling to engage in the assigned work[,] the isolated nature of the jobs[,] the types and availability of such work, and so on." *Id*. Irrespective of whether a discussion of the *Hall* factors is required to permit meaningful judicial review (*compare Ruffin v. Comm'r*, 2011 WL 4537905, at *2-3 (N.D. Ohio) *with Harmon v. Apfel,* 168 F.3d 289, 292 (6th Cir. 1999)) the requirement has been satisfied.

First, in compliance with *Hall*, the reliability of the VE's testimony was addressed. Indeed, the VE testified she arrived at the relevant number of jobs using the Occupational Employment Quarterly and Dictionary of Occupational Titles. (Tr. 66). Furthermore, the types and availability of work were considered. To this end, the VE clarified that the number of regional jobs included positions in the entire state of Ohio. (Tr. 66). Moreover, the ALJ provided a credibility determination, to which Plaintiff did not object. (Tr. 21-24). Last, Plaintiff was represented by counsel at the hearing, who declined to cross-examine the VE or challenge her qualifications. (Tr. 66). Therefore, whether or not they needed to be, the *Hall* factors have been sufficiently addressed in the record.

Furthermore, *Hall* generally directs the Court to exercise "common sense" when determining whether the number of jobs available regionally and nationally constitute a "significant number" of jobs. *See*, *Hall*, 837 F.2d at 275 ("The decision should ultimately be left

15

to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation.").

After viewing the evidence, the undersigned finds that several of the *Hall* factors favor the ALJ's determination. Moreover, Plaintiff has not alleged that the ALJ posed an inadequate or misleading hypothetical to the VE, which would have tainted her opinion, nor has she argued she cannot physically get to any of the suggested jobs. Rather, to find for Plaintiff, this Court would have to declare the number of jobs (83,097 jobs nationally and 892 jobs regionally) insufficient as a matter of law. Without more, the undersigned does not recommend the Court so find. *Compare Geiger v. Apfel*, 2000 U.S. App. LEXIS 16213, at *6 (6th Cir.) (affirming ALJ's step five determination where 75,000 jobs existed nationwide), *and Hall*, 837 F.2d at 275 (affirming ALJ's step five determination where 1,350 – 1,800 jobs existed regionally) *with West v. Chater,* 1997 WL 764507, at *2–3 (S.D. Ohio) (as a matter of law, 100 jobs in the local economy is not significant), *and Mericle v. Secretary of Health and Human Servs., and Waters v. Secretary of Health and Human Servs.,* 827 F. Supp. 446, 448–50 (W.D. Mich. 1992) (1,000 jobs in the state of Michigan not significant). For these reasons, the undersigned finds the ALJ's decision at step five is supported by substantial evidence.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB and SSI benefits applied the correct legal standards and is supported by substantial evidence. The undersigned therefore recommends the Commissioner's decision be affirmed.

    s/James R. Knepp II
    United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).