IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Beth A. Livingston,

                Plaintiff,                Case No. 3:13-cv-886

     -vs-

                                      MEMORANDUM OPINION
                                      AND ORDER

Commissioner of Social Security,

                Defendant.

     Beth A. Livingston applied for social security disability insurance benefits and for supplemental security income benefits with the Social Security Administration. After exhausting her available administrative remedies, the Commissioner of Social Security denied Ms. Livingston's applications for benefits.

     Ms. Livingston then sought judicial review of the Commissioner's decision. The case was referred to Magistrate Judge James R. Knepp II for findings of facts, conclusions of law, and recommendations. The Magistrate Judge issued a report recommending I affirm the Commissioner's decision denying Ms. Livingston's applications for benefits. This matter is before me pursuant to Ms. Livingston's timely objections to the Magistrate Judge's report. The Commissioner has filed a response to Ms. Livingston's objections.

     I have jurisdiction over the Commissioner's final decision denying Ms. Livingston's request for benefits pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 832 (6th Cir. 2006). In accordance with *United States v. Curtis*, 237 F.3d 598, 602–03 (6th Cir. 2001), I have made a de novo determination of the Magistrate Judge's report. For the reasons

1

stated below, I adopt the report and affirm the Commissioner's decision denying Ms. Livingston's applications for benefits.

## I. STANDARD OF REVIEW

I have conducted a de novo review of those portions of the Magistrate Judge's report to which Ms. Livingston objects. 28 U.S.C. § 636(b)(1). In so doing, I have reviewed the Commissioner's decision to determine whether it is supported by substantial evidence. 42 U.S.C. § 405(g). I "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). I do not re-weigh the evidence, but must affirm the Commissioner's findings as long as there is substantial evidence to support those findings, even if I would have decided the matter differently, and even if there is substantial evidence supporting the claimant's position. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citations and internal quotation marks omitted). The Commissioner's decision is not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. *Id.* at 854–55.

## II. DISCUSSION

Because Ms. Livingston has not objected to the Magistrate Judge's factual summary of the case as set forth on pages one through seven of the report, I adopt the Magistrate Judge's findings. The Magistrate Judge's uncontested summary of the case is as follows:

Plaintiff filed applications for DIB and SSI on June 22, 2009, claiming she was unable to work due to bipolar disorder, diabetes, high blood pressure, and chronic pain. (Tr. 147, 149, 181). Her claims were denied initially and on reconsideration. (Tr. 74, 78). At Plaintiff's request, a hearing was held before an administrative law judge ("ALJ"). (Tr. 32, 101). Plaintiff, represented by counsel, and a vocational expert ("VE") testified at the hearing, after which the ALJ found Plaintiff not disabled. (Tr. 12, 32). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1); 20 C.F.R. §§ 416.1455, 416.1481. On April 19, 2013, Plaintiff filed the instant case. (Doc. 1).

## FACTUAL BACKGROUND

### Plaintiff's Vocational and Personal Background

Plaintiff was 49 years old at the time of her alleged disability onset date of June 10, 2008. (Tr. 17, 24). She has a high school education and prior relevant work experience as an administrative clerk, media clerk, and computer operator. (Tr. 24-25).

After spending time in a homeless shelter, Plaintiff moved to a second floor apartment where she lived by herself. (Tr. 42, 191). With respect to daily activities, Plaintiff sat outside and read, wrote poetry (especially during a manic episode), completed household chores with breaks, went grocery shopping but would have to lean on the cart, made her bed, washed her face, and brushed her teeth. (Tr. 191). Plaintiff testified she spent most of the day cleaning with breaks and enjoyed reading James Patterson novels. (Tr. 49-50, 52).

At the hearing, Plaintiff testified she quit her most recent job at Goodwill because her boss made her angry "most days". (Tr. 39). Plaintiff took Lamictal and Wellbutrin but said they caused hand tremors which made it difficult to write and hold heavy objects. (Tr. 41). She said she could not work because she had a hard time focusing and concentrating and suffered from manic bipolar which caused her to be angry. (Tr. 44, 53). Plaintiff said she was hospitalized around 2003 or 2004 when she lost her temper and said things to her daughter she "would never say". (Tr. 44). Plaintiff said she was fired from a product auditing job at Meijer because she fell asleep at work more than once. (Tr. 47). Plaintiff was diabetic and indicated hand tremors made it difficult for her to administer insulin. (Tr. 48). Further, Plaintiff said fibromyalgia-type symptoms and neuropathy made it difficult for her to walk or grocery shop. (Tr. 49, 51).

### Relevant Medical Evidence

Plaintiff generally challenges only the ALJ's conclusions regarding her mental limitations (Doc. 15) and therefore waives any claims about the determinations of her physical impairments. Swain v. Comm'r of Soc. Sec., 379 F. App'x 512, 517-18 (6th Cir. 2010) (noting failure to raise a claim in merits brief constitutes waiver). Specifically, Plaintiff challenges only the ALJ's treatment of Dr. Ilechukwu's opinion and whether the ALJ met her burden at step five. (Doc. 15, at 14, 17). Accordingly, the undersigned addresses only the record evidence pertaining to Plaintiff's arguments.

3

Plaintiff began seeing psychiatrist Sunday Ilechukwu, M.D., in December 2009. (Tr. 797). Plaintiff experienced angry outbursts, yelling, kicking, impaired sleep, and a variable appetite. (Tr. 800). Plaintiff also said two months earlier, she heard her deceased's mother's voice calling her name. (Tr. 800). Dr. Ilechukwu indicated Plaintiff's speech exhibited a normal rate and rhythm, she displayed a full range in her affect that was appropriate to content, her thought process was goal directed and forward thinking, and she denied difficulty with concentration and focus. (Tr. 801). Plaintiff's mood was dysphoric, anxious, and irritable and her insight was fair. (Tr. 801). Dr. Ilechukwu diagnosed bipolar disorder, adjusted Plaintiff's medications, and assigned a global assessment of functioning ("GAF") score of 55.  (Tr. 804).

In March 2010, Dr. Ilechukwu reviewed Plaintiff's medications. (Tr. 766-71, 776-81). Plaintiff said her mind raced at times, she felt anxious and fidgety, and isolated herself to avoid people. (Tr. 767). Plaintiff also complained of insomnia, low energy and motivation, and feeling like a failure. (Tr. 767). Plaintiff said she read three books per week but was often restless and unable to sustain productivity. (Tr. 767). Dr. Ilechukwu noted Plaintiff was "quite interactive", her mood was dysphoric and anxious, affect was brighter, and insight was fair. (Tr. 767). She diagnosed bipolar disorder with psychotic features and adjusted Plaintiff's medication. (Tr. 770-71).

On July 2, 2010, Dr. Ilechukwu noted Plaintiff's mood and insight remained dysphoric and fair, respectively, but overall, she was somewhat improved. (Tr. 983). Dr. Ilechukwu adjusted Plaintiff's medication and assigned a GAF of 55.  (Tr. 986). Plaintiff's condition remained generally unchanged in October 2010. (Tr. 952).

On January 27, 2011, Dr. Ilechukwu indicated Plaintiff's mental status examination was unremarkable and Plaintiff's GAF improved to 57.  (Tr. 941). However, Plaintiff said her anxiety had worsened. (Tr. 937). Consequently, Dr. Ilechukwu increased Plaintiff's dose of medication. (Tr. 941).

On March 25, 2011, Dr. Ilechukwu completed a Medical Source Statement where she indicated Plaintiff had a marked limitation in abilities to withstand the stresses and pressures of routine, simple, unskilled work; interact appropriately with others (including the public, supervisors, and coworkers); and keep a work schedule and maintain punctual attendance. (Tr. 910-11). Plaintiff had moderate limitations in abilities to maintain attention and concentration for two hours and maintain a reasonable pace. (Tr. 910-11). She had less than moderate limitations in abilities to remember, understand, and follow simple instructions. (Tr. 910-11). Dr. Ilechukwu indicated Plaintiff's functional status varied with the phase of illness and medication compliance. (Tr. 911).

On May 6, 2011, Plaintiff told Dr. Ilechukwu that anxiety was more tolerable than the shakes. (Tr. 1064). Dr. Ilechukwu indicated Plaintiff's disability worsened with isolation but she was doing better, her anxiety had not recurred, her energy level was moderate, she was in high spirits, and did not appear psychotic, although she thought she saw or felt a ghost. (Tr. 1064).

On August 26, 2011, Dr. Ilechukwu provided a statement for the Ohio Job and Family Services. (Tr. 1048). She indicated Plaintiff's condition had not yet stabilized at a good functional state and her GAF fluctuated between 52 and 55.  (Tr.

1049). Dr. Ilechukwu considered Plaintiff unemployable. (Tr. 1049).

In September, 2011, Dr. Ilechukwu conducted a medication check where Plaintiff said she was sleeping less and crying all day long. (Tr. 1040). Plaintiff denied difficulty with focus or concentration or suffering from delusions or hallucinations. (Tr. 1041). Plaintiff was oriented, with a logical thought process, was goal-directed, and forward thinking. (Tr. 1041). However, she had a variable mood and was often irritable, her speech was pressured, her mood was dysphoric, irritable, and expansive, and her insight was fair. (Tr. 1041).

At the end of the month, Plaintiff returned to Dr. Ilechukwu's office saying she had not slept in five days. (Tr. 1030). Dr. Ilechukwu noted Plaintiff's grooming was marginal, she was somewhat lethargic, and she was holding on to objects when she walked in, despite her claims she had been dropping things repeatedly. (Tr. 1030). Dr. Ilechukwu suspected a paradoxical reaction to medication, including an impaired ability to absorb general Lamictal. (Tr. 1030).

**State Agency Review and Examination**

On October 29, 2009, Mark Hammerly, Ph.D., performed a consultative examination where he indicated Plaintiff's mental ability to relate to others was mildly impaired and her ability to understand, remember, and follow instructions was not impaired. (Tr. 690). Plaintiff was capable of comprehending and completing simple, routine activities of daily living and had no comprehension or memory problems. (Tr. 690). She was not impaired in ability to maintain concentration, persistence, or pace to perform simple, repetitive tasks and demonstrated no problems with attention or concentration during her clinical interview and mental status exam. (Tr. 690). Plaintiff was moderately impaired in ability to withstand the stress and pressures associated with day-to-day work activity due to bipolar disorder but had no trouble making change and her judgment was grossly intact. (Tr. 690). Concerning bipolar disorder, Dr. Hammerly noted Plaintiff's symptoms were atypical but there was some sort of past bipolar disturbance. (Tr. 689). Dr. Hammerly assigned a GAF of 50 due to her homelessness. (Tr. 689).

State agency psychologist Kristen Haskins, Psy.D., reviewed Plaintiff's medical records on December 15, 2009. (Tr. 701). She opined Plaintiff could complete simple and moderately complex multi-stop instructions in a setting that was not fast paced and did not have stringent time or production requirements. (Tr. 704). On May 27, 2010, Karen Terry, Ph.D., affirmed Dr. Haskins' opinion. (Tr. 854).

**VE Testimony and ALJ Decision**

The ALJ described a hypothetical individual of the same age, education, and work experience as Plaintiff, who was limited to a range of light work. (Tr. 62). The VE opined such a person could work as a charge account clerk, order clerk, or shipping/receiving weigher. (Tr. 63-65).

On October 26, 2011, the ALJ determined Plaintiff suffered from severe impairments, including mild osteoarthritis of the knees; unspecified essential hypertension; unspecified hyperlipidemia, type II (non-insulin-dependent) diabetes mellitus; obesity; and bipolar I disorder. (Tr. 12, 17). The ALJ found these impairments did not meet or medically equal a listed impairment. (Tr. 19).

      Next, the ALJ determined Plaintiff had the residual functioning capacity (RFC) to perform a range of light work, except she required a sit/stand option, did not retain the capacity to climb ladders, ropes, or scaffolds, and could not climb ramps or stairs on more than an occasional basis. (Tr. 21). Further, she could kneel or crawl occasionally and balance or crouch frequently. (Tr. 21). Plaintiff retained the mental capacity to carry out simple to moderately complex tasks in a low stress, non-production-pace environment and could tolerate occasional interaction with the general public. (Tr. 21).
      Based on VE testimony, the ALJ determined Plaintiff could perform work as a charge account clerk, order clerk, or shipping/receiving weigher, and was therefore, not disabled. (Tr. 25).

### III. LIVINGSTON'S ARGUMENTS

Ms. Livingston objects to the ALJ's evaluation of the medical opinion of Dr. Sunday Ilechukwu, a treating physician. The controlling decision on this issue is *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011). In *Cole*, the court noted the Commissioner has elected to impose certain standards on the treatment of "medical source evidence." *Cole*, 661 F.3d at 937. Under what is commonly known as the "treating physician rule," *Cole*, 661 F.3d at 937, the Commissioner requires an ALJ to give a treating physician's opinion controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id.* (internal quotation marks and citation omitted).

Ms. Livingston argues the ALJ failed to give a sufficient explanation regarding her analysis of why she did not fully credit Dr. Ilechukwu's opinion. Ms. Livingston asserts the ALJ failed to acknowledge the totality of the doctor's opinion and only mentioned two of his limitations in assessing the doctor's report. Ms. Livingston states social security regulations and case law require the ALJ to explain the weight given to the opinion of a treating physician. (Doc. No. 19, pp. 2–3). Ms. Livingston emphasizes the issue she is raising is not "whether substantial evidence supports the [ALJ's] decision but whether the [ALJ] provided good reasons for the weight given to [the] treating

6

psychiatrist['s] opinion." (Doc. No. 19, pp. 5–6).

In analyzing Dr. Ilechukwu's opinion, the ALJ stated:

> In light of the claimant's own reports included in her treating records, it is impossible to accept Dr. Ilechukwu's assertion that the claimant does not possess the ability to interact with others or to deal with stress on a full-time basis. (Ex 22F). To the contrary, I agree that she should be able to complete "simple and moderately complex multi step instruction in a setting that is not fast paced and does not have stringent time or production requirements." (Ex. 13F). Out of an abundance of caution, I have also agreed to limit her exposure to the general public since the claimant testified that she has some anxiety when dealing with others.

(Tr. 23).

The ALJ noted in a footnote:

> I add that it is impossible to reconcile the obvious inconsistencies between (1) Dr. Ilechukwu's reference to a "marked" limitation in the claimant's ability to maintain adequate social functioning, (2) the subsequent assertion that the claimant's bipolar symptoms appear to get *worse* with social isolation; and (3) the assignment of GAF scores in the "moderate" range at all times. (Exs. 17F:65, 21F:8,48, 22F, 23F).

(Tr. 23 n.4) (emphasis in original).

In *Irvin v. Social Sec. Admin.*, No. 13-6600, 2014 WL 3608506, at *2 (6th Cir. July 22, 2014), the court addressed the issue of whether the ALJ sufficiently explained a credibility decision. The court stated an ALJ's explanation is sufficient when it "make[s] clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Irvin*, 2014 WL 3608506, at *2 (quoting SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996)); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007).

As a "subsequent reviewer" of the ALJ's decision, I agree with the Magistrate Judge regarding his assessment of the decision. The ALJ stated why she could not accept Dr. Ilechukwu's opinion. Specifically, the ALJ explained the doctor's opinion had "obvious inconsistencies" concerning Ms. Livingston's ability to engage in social functioning, bipolar symptoms, and GAF

7

scores.  (Tr. 23 n.4).  Further, the doctor's opinion was contradicted by Ms. Livingston's statements and medical records.  The ALJ further cited to the exhibits upon which she relied upon to reach her decision.  The explanation gives me more than enough information to understand why the ALJ rejected Dr. Ilechukwu's opinion and I understand the rejection is because the doctor's opinion conflicts with Ms. Livingston's statements and medical records.  Accordingly, I conclude the ALJ's decision is supported by substantial evidence on this issue.

Ms. Livingston argues it is the responsibility of the ALJ, and not the Court, to determine if there are a significant number of jobs which she can perform.  Although the ALJ identified three positions which she felt Ms. Livingston could perform, the parties agree only the shipping/receiving weigher position is applicable to Ms. Livingston.  The issue presented is whether the 83,097 jobs nationally and 892 jobs regionally constitute a significant number of job as required by 20 C.F.R. §§ 404.1566 and 416.966.  *Hall v. Bowen*, 837 F.2d 272, 274–75 (6th Cir. 1988).

Ms. Livingston contends the Court is not allowed to determine whether 83,097 jobs is a significant number of jobs in the national economy.  She states this determination must be made by the ALJ.  Should I adopt this position, I would be committing two errors of law.  First, I would be ignoring the decision of *Geiger v. Apfel*, No. 99-5590, 2000 WL 1257184, at *1–2 (6th Cir. July 10, 2000), wherein the Sixth Circuit found 75,000 dispatcher-type positions which existed in the national economy to be a sufficient number to satisfy the Commissioner's burden.  Secondly, it is my responsibility to determine whether the decision of the Commissioner is supported by substantial evidence.  *Brainard.*, 889 F.2d at 681.  Because the ALJ found Ms. Livingston capable of performing 83,097 jobs in the national economy and this number is more than the number of positions found in *Geiger*, I find the ALJ's decision supported by substantial evidence on this issue.

## IV. CONCLUSION

Accordingly, the Magistrate Judge's report and recommendation is adopted and the Commissioner's denial of Ms. Livingston's applications for social security disability insurance benefits and for supplemental security income benefits is affirmed.

So Ordered.

_s/ Jeffrey J. Helmick_
United States District Judge
